**Everett HADIX, et al., Plaintiffs–Appellees,**

v.

**Perry JOHNSON, et al., Defendants–Appellants.**

Nos. 93–2282, 93–2349.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1994.

Decided Sept. 18, 1995.

See also: 740 F.Supp. 433; 943 F.2d 51; 792 F.Supp. 527; 46 F.3d 1131.

Michael Barnhart, Barnhart & Mirer, Detroit, MI, Elizabeth R. Alexander, Chief Staff Counsel (argued and briefed), National Prison Project, Washington, DC, for plaintiffs-appellees.

Susan Przekop-Shaw, Sanna Durk McAra (briefed), Office of the Attorney General, Corrections Division, Lansing, MI, Kim G. Harris (argued), Michigan Department of Attorney General, Corrections Division, Lansing, MI, for defendants-appellants.

Before: NELSON, NORRIS, and DAUGHTREY, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is a prisoner civil rights case in which the defendants challenge fees awarded to the plaintiffs' lawyers for monitoring a consent decree. The plaintiffs retained out-of-town expert counsel, and in calculating the fees such counsel were to receive under 42 U.S.C. § 1988 the district court used hourly rates of $250 for lead counsel and $135 for secondary counsel. Because we conclude that the plaintiffs did not meet their burden of showing the necessity of employing out-of-town expert counsel, and because we do not believe that the district court properly took into account the nature of the monitoring work in question, we shall vacate the award and send the case back with instructions to calculate the award for lead counsel under a lower hourly rate.

I

This suit, in which a prisoner named Everett Hadix and others challenged the conditions of their confinement at the State Prison of Southern Michigan, was filed as a class

action in 1980. Most of the issues were settled in 1985 by a consent decree entered by the United States District Court for the Eastern District of Michigan.

Two Detroit attorneys monitored the defendants' compliance with the mandates of the *Hadix* decree from 1988 until March of 1993. These attorneys were compensated at a rate of $150 per hour for lead counsel and $135 for associate counsel.

For many years, the *Hadix* class of inmates monitored the medical and mental health portions of the *Hadix* decree in their role as *amicus curiae* in a similar civil rights suit filed by the federal government. After this court substantially limited the *amicus* role of another group of Michigan inmates (the "*Knop* class") in *United States v. Michigan,* 940 F.2d 143 (6th Cir.1991), the role that the *Hadix amici* had been playing in that case was likewise cut back.[1] Detroit counsel apparently began spending much more time working directly on *Hadix* issues, and the plaintiffs added two local attorneys to assist with routine monitoring of the *Hadix* decree.

Portions of the *Hadix* decree involving medical care, mental health, and access to courts issues were transferred to the Western District of Michigan in June of 1992. Following the transfer the plaintiffs sought out fee petitioner Elizabeth Alexander, of the American Civil Liberties Union's National Prison Project, and asked her to take on the *Hadix* medical and mental health issues. Ms. Alexander, a nationally recognized expert in federal court institutional litigation, is also counsel of record for the *Knop* class in its *amicus* role in *United States v. Michigan.* She entered an appearance in *Hadix* and began working on the health care issues in this case.

In April of 1993 a fee application was filed covering 224.8 hours of work for Ms. Alexander at a rate of $300 per hour and 4.3 hours of work for David Fathi (also with the National Prison Project) at a rate of $170 per hour, plus costs and expenses. Over objection by the defendants, the district court awarded fees at a rate of $250 per hour for Ms. Alexander and $135 per hour for Mr. Fathi. The defendants do not dispute that plaintiffs' counsel are entitled to fees by virtue of the consent decree; they challenge only the rates used to calculate the award.

## II

■ The defendants contend that the hourly rates used by the district court were unreasonably high, especially in view of the fact that the rates were applied to monitoring activity for which a fee award was guaranteed under the terms of the consent decree. The defendants suggest that the rate applied to Ms. Alexander's work should not have been $250, but a "Detroit rate" of $150.[2] We agree.

■ Section 1988 places the award of reasonable attorney fees within the discretion of the court. 42 U.S.C. § 1988; *Crabtree v. Collins,* 900 F.2d 79, 82 (6th Cir.1990). Because of "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," an award of attorneys' fees under § 1988 is entitled to substantial deference. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Louisville Black Police Officers Org., Inc. v. City of Louisville,* 700 F.2d 268, 274 (6th Cir.1983) ("*Louisville BPO*"). Accordingly, we review a district court's award of attorney fees, including the fee rate, only for abuse of discretion. *Monroe Auto Equipment v. UAW Lo-*

---

1. The *Hadix* class is limited to inmates in the Central Complex of the State Prison for Southern Michigan. The *Knop* class includes other areas of the State Prison for Southern Michigan, as well as three other Michigan prisons. For some of the procedural history of these lawsuits, see *Knop v. Johnson,* 977 F.2d 996 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993); *United States v. Michigan,* 940 F.2d 143 (6th Cir.1991).

2. In their briefs, the defendants primarily focus on the rates applied to the work of Ms. Alexander. We tailor our comments in the text accordingly. The defendants have not persuaded us that the district court used an unreasonable rate for Mr. Fathi. That rate, $135 per hour, is the same that local associate counsel receive.

cal 878, 981 F.2d 261, 269 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2396, 124 L.Ed.2d 298 (1993). The trial court, however, must provide a clear and concise explanation of its reasons for the fee award. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Louisville BPO,* 700 F.2d at 273.

■ The primary concern in an attorney fee case is that the fee awarded be reasonable. *See Blum v. Stenson,* 465 U.S. 886, 893, 104 S.Ct. 1541, 1545, 79 L.Ed.2d 891 (1984). A reasonable fee is "one that is 'adequate to attract competent counsel, but ... [does] not produce windfalls to attorneys.'" *Id.* at 897, 104 S.Ct. at 1548 (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976) U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913). When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768–69 (7th Cir.1982); *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983). A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate. *Chrapliwy,* 670 F.2d at 769.

■ In the case at bar we are persuaded that the fee petitioners failed to carry the initial burden of showing that it was necessary to resort to an out-of-town specialist. The record is devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market. The petitioners seek to justify their choice of Ms. Alexander by pointing to her nationally recognized expertise in institutional reform litigation, as well as her familiarity with the case. But Section 1988 does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel. Proof that Ms. Alexan-

der has a national reputation for expertise in this kind of litigation does not constitute proof that her expertise was necessary in this phase of the present litigation.

The case at bar is unlike most complex institutional litigation, where the time commitment and uncertainty of payment often discourage economically rational private attorneys from becoming involved. The predominant reason institutional reform plaintiffs usually have difficulty finding counsel, as the Supreme Court observed in connection with contingent-fee arrangements, is that "in any legal market where the winner's attorney's fees will be paid by the loser ... attorneys [are likely to] view [the] case as too risky (i.e., too unlikely to succeed)." *City of Burlington v. Dague,* 505 U.S. 557, 564, 112 S.Ct. 2638, 2642, 120 L.Ed.2d 449 (1992).

No such risk is present here. The consent decree that governs this case virtually guarantees fee awards. The case is hardly renowned for a lack of litigiousness, moreover, and it shows few signs of winding down. From counsel's standpoint, *Hadix* more closely resembles a cash cow than a bottomless pit. It is highly likely that the guaranteed stream of income this litigation offers would prove a more potent lure for competent counsel than the more ephemeral promise of a fee award at counsel's usual rate in the case of victory—and it is the desire to "achieve the ... goal of mirroring market incentives" that drives the policy underlying the fee-shifting statutes. *Dague,* 505 U.S. at 563–65, 112 S.Ct. at 2642; see also *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1449 (3d Cir.1988).[3]

■ Under these circumstances, and without challenging the district court's finding that this case presents unusually complex legal and factual issues, we simply cannot believe that competent counsel capable of handling complex litigation would not have been available locally at a significantly lower rate. See *Chrapliwy,* 670 F.2d at 769. Hourly rates should not exceed what is nec-

3. Although the parties agree that the reasonable-hours-times-reasonable-hourly-rate method is appropriate in the instant case, we note that in the private sector, law firms are increasingly turning to alternative billing methods, such as flat fee arrangements, which are more cost-predictable. Mike France, *Clock's Running on Billable Hours,* Nat'l Law J., Dec. 19, 1994, at C1.

essary to encourage competent lawyers within the relevant community to undertake legal representation. *Coulter v. State of Tennessee,* 805 F.2d 146, 148–149 (6th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). Accordingly, we believe that the district court abused its discretion in awarding fees to Ms. Alexander at a rate which apparently falls toward the high end of the range of rates charged by partners in large Detroit law firms.

■■■ Attorney fees under § 1988 are to be based on market rates for the services rendered. *Missouri v. Jenkins,* 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Ordinarily, courts look to "[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11; see also *American Fed'n of Gov't Employees, AFL–CIO Local 3882 v. Federal Labor Relations Authority,* 944 F.2d 922, 937 (D.C.Cir.1991) (a reasonable fee equates to a market-rate fee).

The community market rule has the principle virtue of being the easiest way to cope with the "inherently problematic" task of ascertaining a reasonable fee in a situation where "wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable. . . ." *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990), citing *Blum,* 465 U.S. at 895–96, 104 S.Ct. at 1547–48. Determining the ordinary fee for similar work in the relevant community does not, however, mean that courts must invariably divorce themselves from the case at hand and go through the lengthy calculus of ascertaining the range of rates that private law firms charge locally, estimating whether the public interest work involved is analogous to work that would command ordinary or premium rates, and then determining where the public interest lawyer's experience and reputation would place him within the range. Frequently, there are procedural shortcuts available that help place fee claims in their proper perspective, and keep litigation over fees from becoming—as it has in the case at bar—"a second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

■■■ In the case of private attorneys, for example, where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award. *McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir.1988). As the Third Circuit has noted, normal billing rates usually "provide an efficient and fair short cut for determining the market rate." *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir.1993). We believe the case at bar provides an analogous situation. Here, the litigation has been ongoing since 1980, and the monitoring work for a decade. Lead local counsel, Michael Barnhart, has been involved in the case, particularly its mental health issues, since 1983, and is himself a highly experienced public interest attorney whose practice is centered in metropolitan Detroit. The fees he commands—which no one is challenging on appeal—are periodically adjusted upward, presumably in response to changes in the local market. Accordingly, we assume these fees already reflect the ordinary market rate for private attorneys of similar reputation and experience in the community, and are presumptively reasonable. See *Blum,* 465 U.S. at 895–96, 896 n. 11, 104 S.Ct. at 1547–48, 1547 n. 11. Because local counsel failed to prove that they needed additional counsel more experienced than they, the rates that local counsel presently receive provide an efficient and fair shortcut for determining Michigan's community market rate for this type of litigation.

Consequently, we find that local counsel's present rates—$150 per hour for lead counsel, $135 per hour for associate counsel—accurately establish the prevailing market rate for complex institutional reform litigation. Although the plaintiffs say that as early as 1989 Ms. Alexander was receiving $190 per hour for in-court activities and $150 per hour for out-of-court activities in the related case of *Knop v. Johnson,* the *Knop* court specifically rejected an award of median market fees and granted a premium rate for an out-of-town expert. *Knop v. Johnson,* 712 F.Supp. 571, 583 (W.D.Mich.1989). As we have already stated, the plaintiffs failed to

establish the need for an out-of-town expert in the instant case.

For the foregoing reasons, we **VACATE** the award of fees and **REMAND** the case to the district court for entry of an award not inconsistent with this opinion.