# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2011

No. 10-40036

Lyle W. Cayce
Clerk

SYLVESTER MCCLAIN, on his own behalf and on behalf of a class of similarly situated persons; BUFORD THOMAS, on his own behalf and on behalf of a class of similarly situated persons; PATRICK ROSS, on his own behalf and on behalf of a class of similarly situated persons; MARY THOMAS, on her own behalf and on behalf of a class of similarly situated persons; EDDIE K MASK, on his own behalf and on behalf of a class of similarly situated persons; LEROY GARNER, on his own behalf and on behalf of a class of similarly situated persons; SHERRY CALLOWAY SWINT, on her own behalf and on behalf of a class of similarly situated persons; WALTER BUTLER, on his own behalf and on behalf of a class of similarly situated persons also known as "A"; FLORINE THOMPSON, on her own behalf and on behalf of a class of similarly situated persons; CLARENCE OWENS, on his own behalf and on behalf of a class of similarly situated persons also known as "C"; CLIFFORD R DUIRDEN, on his own behalf and on behalf of a class of similarly situated persons; EARL POTTS, on his own behalf and on behalf of a class of similary situated persons; ROALD MARK, on his own behalf and on behalf of a class of similary situated persons; PLAINTIFF CLASS; ALL PLAINTIFFS,

Plaintiffs - Appellants Cross-Appellees

v.

LUFKIN INDUSTRIES INC.,

Defendant - Appellee Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:

No. 10-40036

After multiple appeals to this court[1] and extensive trial and other proceedings, plaintiffs' Title VII class action for employment discrimination against Lufkin Industries, Inc. culminated in a favorable multimillion dollar judgment and injunctive relief. Before this court – in the final possible dispute – are challenges by both parties to the district court's attorneys' fee award and Lufkin's complaint that back pay damages were erroneously authorized in an earlier appeal. We affirm as to the back pay damages but vacate and remand as to the attorney's fees. In particular, given the unrebutted evidence in the record that it was necessary for plaintiffs to retain counsel from outside the Eastern District of Texas, the district court abused its discretion in failing to use the rates counsel charged in their home district as the starting point in the lodestar calculation.

## I. BACKGROUND

In early 1995, Sylvester McClain, a black employee in Lufkin's trailer division, filed a complaint with the Equal Employment Opportunity Commission (EEOC) over his manager's alleged efforts to demote him. Another Lufkin employee, Buford Thomas, filed an EEOC claim in February 1997, complaining that he was denied promotional and training opportunities on account of his race. The EEOC issued right-to-sue letters on both claims. In 1997, McClain and Thomas filed a class action under Title VII challenging many of Lufkin's employment practices under disparate treatment and disparate impact theories. The district court certified a class and narrowed the claims in ways not relevant

---

[1] *See McClain v. Lufkin Industries, Inc.*, 108 Fed. App'x. 176 (5th Cir. 2004) ("*McClain I*"); *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, (5th Cir. 2008) ("*McClain II*"); *McClain v. Lufkin Industries, Inc.*, 342 F. App'x. 974 (5th Cir. 2009) ("*McClain III*").

2

No. 10-40036

to the issues before this court. *See McClain v. Lufkin Indus., Inc.*, 187 F.R.D. 267 (E.D. Tex. 1999).

From the start, Plaintiffs were represented by Timothy Garrigan, an attorney based in the Eastern District of Texas with extensive experience in employment law and civil rights. The court complimented his firm in the certification order:

> Counsel for the Plaintiffs are known to this court as trial lawyers experienced in employment law, civil rights actions, and complex litigation. Counsel have documented their qualifications through documents submitted to the court recounting the breadth of their experience in these areas of the law. Finally, class counsel have pursued this suit and related issues with an unmistakable zeal.

*Id.* at 281-82. Garrigan headed a three-lawyer firm in Nacogdoches, Texas. After obtaining class certification in 2000, Garrigan found that Lufkin was unwilling to settle, and that his clients might face protracted litigation. Thus, Garrigan felt it was imperative to associate with co-counsel in order to successfully try this case. The case's ultimate trajectory, which spanned a decade and involved thousands of attorney hours, confirmed his initial impression.

Garrigan consulted with many experienced employment lawyers in Texas and found that "none of them was willing or able to commit the time and resources necessary to associate as co-counsel and prosecute this class action . . . ." The record includes numerous affidavits from experienced Texas litigators and even the founder and past president of the Texas Employment Lawyers Association declaring, under oath, that no Texas attorneys were available to join Garrigan's team on this particular case. It is clearly established

3

No. 10-40036

that Garrigan diligently searched for, but could not find, any lawyers in Texas who were willing and able to join him in litigating this class action.[2]

Significantly, Lufkin submitted nothing to refute or challenge this evidence. Lufkin submitted the declarations of five Texas lawyers regarding their hourly rates, but none of those declarants claimed that they, or anyone else

---

[2] For instance, J. Derek Braziel, an experienced Texas litigator in labor and employment law, explained: "I do not work on employment discrimination class action cases for largely financial reasons, even though I am competent and have the resources to do so. . . . Employment discrimination class actions usually take much longer to litigate than the average employment discrimination or wage and hour case. Defendant companies often use their substantial financial advantage to outstaff and outwork plaintiffs with limited personal resources. . . . Employment discrimination class actions usually involve extensive expert testimony and the commitment of financial resources that far exceeds other employment law cases. . . . [There is] a significant risk that a fee will never be collected. Even in the best of circumstances, payment for class counsel's time and reimbursement of expenses is delayed for several years. For these reasons neither I, nor my firm, represent plaintiffs in employment discrimination class actions."

Claude Welch, an attorney in Lufkin, Texas with experience in complex civil litigation, declared: "There is a need for lawyers in the Eastern District of Texas who are capable of and willing to represent clients in complex employment discrimination class action and other complex civil rights cases. I do not generally undertake such cases because of their difficulty, their complexity, and because the uncertainty of success has generally outweighed the prospect of obtaining a contingent statutory fee."

Steven B. Thorpe, an experienced litigator in Dallas, declared: "My practice focuses in large part on employment civil rights cases in which I represent plaintiffs. . . . [T]he greatest portion of my practice prior to approximately 1985 was in the representation of plaintiffs in class action discrimination suits. At that time I and the firm with which I was associated largely abandoned that area of practice because we found it to be financially infeasible. At this time and for more than a decade I have done no class action employment litigation. . . . I do not know of any other experienced plaintiffs' class action employment lawyers in Texas who were available, able and willing to commit the time and expenses necessary to the prosecution of this case."

Margaret A. Harris, the founder and past president of the Texas Employment Lawyers Association, declared: "While there are certainly lawyers in this State with the requisite knowledge to do the work that the lawyers from Goldstein Demchak provided, they do not to the best of my knowledge have the resources to have provided those services. Similarly, while there are law firms in this State who have the financial resources to have stepped in as Class Co-Counsel, they do not to the best of my knowledge have the requisite knowledge of the law to have done the work that the lawyers and other staff members from Goldstein Demchak provided."

No.  10-40036

they knew, would have been willing and able to get involved in this case in 2000. It is therefore uncontested that Garrigan was not able to obtain support from Texas co-counsel.

Unable to find suitable co-counsel in Texas, Garrigan turned to the firm now known as Goldstein, Demchak, Baller, Borgen & Dardarian ("Goldstein Demchak"), based in Oakland, California.  Goldstein Demchak, which has a nationwide reputation as a plaintiffs' employment class action firm, agreed to associate with Garrigan and take part in this case.

Ultimately, the case went to a bench trial, and in January 2005, the district court found that Lufkin had discriminated against black employees in certain initial work assignments and in promotion decisions.  The court ordered back pay, attorneys' fees, and injunctive relief.  This court affirmed the disparate impact promotion claims after concluding that Thomas had properly exhausted his administrative remedies when he filed his 1997 EEOC complaint, *McClain II*, 519 F.3d at 264, but we reversed the judgment as to the initial assignment claims because plaintiffs had not exhausted their administrative remedies.  This court directed the district court to award back pay damages for the lost promotions dating back to 1994.  *Id.* at 281.  We also vacated and remanded the trial court's injunctive order, which was too vague, and its attorneys' fee award, which was insufficiently explained.  *Id.* at 283-84.

On remand, the new district judge, who stepped in to replace the deceased trial judge, scrupulously followed the mandate of *McClain II*.[3]  Pertinent to this appeal, he awarded $3.3 million in back pay to the class for discriminatorily lost promotions dating back to 1994.  He issued a twenty-four page ruling addressing plaintiff counsel's application to receive over $7.7 million in attorneys fees.  (The

---

[3] The court's detailed injunction against Lufkin was not appealed.

No. 10-40036

award exceeding $1 million for counsel's costs and expenses has not been appealed.) After sifting through voluminous billing records, the court ruled for plaintiffs' counsel on nearly all issues, and, in particular, declined to reduce their fees beyond a self-adjustment offered by counsel for having pursued unsuccessful Title VII claims. The court ordered a generous $400 hourly rate for Garrigan, the lead attorney. It refused, however, to order payment to partners at Goldstein Demchak at a $650 hourly rate, the prevailing rate in the San Francisco Bay Area. The court's discussion is concise:

> 2. Partners at the Goldstein Demchak Law Firm
>
> Plaintiffs contend that the court should disregard the local rates for the Goldstein Demchak Law Firm ("Demchak Firm") and apply a rate commensurate with attorneys from the northern California area where the Demchak Firm is located because of its unique experience dealing with employment discrimination class action cases.
>
> When the Demchak Firm entered the case in 2000, Mr. Garrigan had already certified the case and Lufkin's appeal had been rejected. While it was still necessary to mediate the case, complete discovery, and try the case, Mr. Garrigan participated to a greater extent than any other attorney. He certified the class, was lead counsel throughout the entirety of the case, and examined 11 out of 22 witnesses at trial. The Demchak Firm possessed experience settling class action employment cases, but there is no evidence to suggest that they were experienced at trying such cases.
>
> Plaintiffs have firmly established that in calculating the fee for Mr. Garrigan the appropriate community for rate comparison purposes are [sic] those who participate in complex litigation in the Eastern District of Texas. It would be difficult to justify assigning a higher hourly rate to second-chair attorneys, no matter how skilled in employment law. No unusual circumstances exist to suggest that those in the Eastern District who have experience with complex litigation were unavailable and could not have effectively participated. The court is aware of many attorneys in the Eastern

6

No.  10-40036

District experienced in employment law and complex litigation. Two who would not be likely to have a conflict with Lufkin Industries are Clyde Siebman and John Werner.  Absent sufficient evidence that experienced, qualified local counsel were unwilling to participate, the court will not assume counsel from distant states were necessary.  Counsel at the Demchak Firm are located in Oakland, California, but it was their choice to participate on this case. Mr. Garrigan brought the suit, certified the class and carried the yeoman's burden at depositions and trial.  Based on the affidavits, Mr. Garrigan was the attorney with extensive experience as first chair in actual trials.  The Demchak Firm's attorneys undoubtedly provided valuable support but they cannot expect to receive rates fifty percent higher than Mr. Garrigan's, especially when the court has approved the time they spent in traveling from California.

Hourly rates should be computed according to the prevailing market rates in the relevant legal market. [citation omitted]  This court will apply local rates for the Demchak firm. [citation omitted] . . . However, the rates should not be less than $250/hr, as Defendant contends. . . .

The court awarded $400 per hour to partners at Goldstein Demchak, with comparably reduced awards for their associates and paralegals.  The final total fee award was approximately $4.7 million.

On appeal, the parties aggressively dispute: (1) the award of local district rates to the Goldstein Demchak firm; (2) the court's refusal to disallow more of counsel's hours allegedly incurred for unsuccessful claims; and (3) the calculation of the back pay award.  Jurisdiction here is founded on 28 U.S.C. § 1291.

## II.  ATTORNEYS' FEE AWARD

The district court's factual findings as to the hours reasonably expended and the reasonable rates for attorneys' fees are reviewed by this court for clear error.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

No. 10-40036

When the court applies to this "lodestar" the twelve *Johnson* adjustment factors,[4] its decision — absent an error of law — is reviewed for abuse of discretion. *Id.* at 329.

## A.    Community versus out-of-district hourly rates

Asserting that California counsel were entitled to be reimbursed at California rates rather than the rate awarded to counsel in the forum, plaintiffs first contend that the district court erred because no other local counsel were willing to assist Garrigan in this complex class action. They also contend that a recent Supreme Court decision supports an award to plaintiffs' counsel that matches the rates allegedly paid by Lufkin to its Houston attorneys. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010). Lufkin, for its part, seeks an even larger reduction in the fee award for work performed by plaintiffs' counsel on unsuccessful claims in the litigation. We are constrained to vacate the fee award and remand for re-calculation.

The precedents and purposes governing fee-shifting awards in civil rights cases are well established. The awards facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel. Fee awards must, however, be reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). The linchpin of the reasonable fee is the lodestar calculation, a product of the hours reasonably expended by the law firms and the reasonable hourly rate for their services. *Id.* Charges for excessive, duplicative, or inadequately documented work must be excluded. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Seminal to this case is the principle that "reasonable" hourly rates "are to be calculated according to the prevailing market rates in the relevant

---

[4] *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984). Further, *Blum* noted, "the burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n.11. In an unbroken and consistent line of precedent, this court has interpreted rates "prevailing in the community" to mean what it says. Thus, as early as 1974, this court required district courts to consider the customary fee for similar work "in the community." *Johnson*, 488 F.2d at 718; *see also Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985) (Title VII guarantees "fair compensation" and not whatever "lions at the bar" may command); *Alberti v. Klevenhagen*, 896 F.2d 927, 931 (5th Cir. 1990) *vacated in part on reh'g*, 903 F.2d 352 (1990); *Islamic Ctr of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989); *Watkins*, 7 F.3d at 458-59; *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998). Most telling, perhaps, is this court's decision in a landmark affirmative action case reducing the fee of plaintiffs' counsel, a former U.S. Assistant Attorney General and subsequent U.S. Solicitor General, from the rates he charged in Washington, D.C., to the prevailing rate in the forum, Austin, Texas. *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (discussing Ted Olson's billing rates).

A number of our sister circuits, however, have taken the position that out-of-district counsel may be entitled to the rates they charge in their home districts under certain limited circumstances. The Sixth Circuit has observed that "[w]hen fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance,

No.  10-40036

and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982)).  Other circuits have used a similar approach.  *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 259-60 (3d Cir. 1995); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983); *Donnell v. United States*, 682 F.2d 240, 252 (D.C. Cir. 1982).

But the two-prong *Hadix* test is applied cautiously: even courts that concluded out-of-district counsel were necessary often affirmed reduced fees for those attorneys.  *See Casey*, 12 F.3d at 806 (approving a rate reduction for out-of-district counsel from $195 per hour to $150 per hour); *Zolfo*, 50 F.3d at 259-61 (noting that under 11 U.S.C. § 330, the starting point for a fee calculation should be the attorneys' home district, but nevertheless affirming the district court's use of in-district rates as the starting point because it "achieved substantially the same result").  Indeed, these circuits have stressed that appellate courts should be particularly reluctant to find an abuse of discretion.  *See, e.g.*, *Nat'l Wildlife*, 859 F.2d at 317 ("The computation of attorneys fees is primarily the task of the district court, and we are not entitled to disturb a district court's exercise of discretion even though we might have exercised that discretion quite differently."); *Zolfo*, 50 F.3d at 261 ("The bankruptcy court cut Zolfo Cooper's total compensation request approximately twelve percent. When faced with a reduction of ten percent in a similar case, we stated that '[n]o court, viewing a record of this magnitude from the distance inherent in appellate review, could

10

No. 10-40036

assess the reasonability of a reduction as slight as ten percent with flawless precision.'" (citation omitted)).

To fulfill the purpose of Section 1988 fee awards, while accommodating *Blum*'s and this court's focus on local forum rates for attorney fees, we hold that where, as here, abundant and uncontradicted evidence proved the necessity of Garrigan's turning to out-of-district counsel, the co-counsel's "home" rates should be considered as a starting point for calculating the lodestar amount. Because local rates may well reflect a lower cost of living in the forum, which will also be indicative of lower potential damage awards, the district court retains discretion to adjust the lodestar and achieve an overall reasonable fee award.[5]

Here, the district court carefully reviewed the hours billed by all counsel and assessed counsel's rates. In doing so, it adjusted the local prevailing rate upward to award the principal trial counsel, Mr. Garrigan, a local attorney, $400 per hour. The court, however, adjusted the claimed hourly rates of the Goldstein Demchak attorneys downward from those prevailing in their hometown California market ($650 per hour for partners and proportionately lower for associates and paralegals) to those prevailing in the Eastern District of Texas. The court reasoned that: (1) it had not been shown that attorneys from outside the Eastern District of Texas were necessary to the representation of the plaintiff class; (2) the Fifth Circuit <u>requires</u> compensation at locally prevalent rates rather than the rates charged in one of the highest priced legal markets in the United States; (3) the Goldstein Demchak attorneys performed second-chair trial duties, which did not entitle them to be paid at rates fifty percent higher than those of Garrigan.

---

[5] Our decision in *Hopwood*, *supra*, is not inconsistent with this holding. *Hopwood* affirmed the district court's finding that higher-priced out-of-district counsel were not essential to prosecuting the appeal for which compensation was sought.

No.  10-40036

Unfortunately, the district court clearly erred in finding that local counsel were readily available to assist Garrigan, and it legally erred in suggesting that local community rates are always required when out-of-district counsel are employed.   These errors require us to reverse and remand the award to the Goldstein Demchak lawyers for further consideration. Some further elaboration is useful.

First, as was discussed above, the record is replete with affidavits from a variety of expert employment lawyers who swore that no Texas attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration.  Lufkin provided no rebuttal evidence.   The district court explained only that it was "aware" of many attorneys in the Eastern District experienced in employment law and complex litigation, and it named two attorneys, neither of whom is otherwise mentioned in the evidence.  Yet, "[t]he hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate."  *League of United Latin Am. Citizens v. Roscoe I.S.D.*, 119 F.3d 1228, 1234 (5th Cir. 1997).  The district court clearly erred in finding contrary to the record that local attorneys were available to assist in the representation.

Second, we here clarify our adherence to the common view of circuit courts that in the unusual cases where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation.  *See generally Hadix*, 65 F.3d at 535; *Zolfo, Cooper & Co.*, 50 F.3d at 259-61; *Casey*, 12 F.3d at 805-06; *Nat'l Wildlife Fed'n*, 859 F.2d at 317; *Maceira*, 698 at 40.  This court's focus on local community rates, like that of the Supreme Court in *Blum*, sets a floor for compensation, to emphasize that civil rights litigation under a

No. 10-40036

fee-shifting statute is not a *pro bono* enterprise. On the other hand, the statutes' purposes are not fulfilled if counsel reap a windfall at the expense of a defendant by overcharging for their services. *See Riverside v. Rivera*, 477 U.S. 561, 580 (1986) ("Congress intended that statutory fee awards be adequate to attract competent counsel, but not produce windfalls to attorneys." (internal quotations and citations omitted)). Nor, as we have put it, are counsel necessarily entitled to what "lions at the bar" command. *See Van Ooteghem*, 744 F.2d at 1338. The trial court legally erred by using the Eastern District of Texas rates for Goldstein Demchak as its starting point in this unusual situation.

As a consequence of these problems, the fee award to Goldstein Demchak must be recalculated on remand. The firm's California rates ought not be simply inserted into the court's previous calculations; that they are the new starting point does not require them to be the end point of analysis. *See* cases cited *supra*. It is apparent that the court carefully tailored the award, adjusting it, inter alia, for the second chair role played by the firm, approving hourly rates for travel time, removing a small amount of duplicative work and as will be noted, discounting the hours spent on unsuccessful claims in the litigation. To the extent the court deems appropriate, it may have to reconsider all aspects of the fee award to achieve reasonable compensation in light of the results obtained for the class members.

## B.     Comparability of plaintiffs' and defense's counsel fees

Although we have concluded already that remand is necessary, it is appropriate to address and firmly reject plaintiffs' other challenge to the fee award, arising from the Supreme Court's recent opinion in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010). In *Perdue*, the Court approved, only "in extraordinary circumstances," an increase in the attorneys' fee lodestar "due to superior performance and results." *Id*. at 1669. Two Justices specially

No. 10-40036

concurred in emphasis of the rarity of such cases. *See id.* at 1677 (Kennedy, J, concurring); *id.* at 1677-78 (Thomas, J., concurring). True, *Perdue* notes in passing that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 1672 (emphasis in original). But *Perdue* never requires or even hints at the plaintiffs' proposition: that their hourly rates should approximate those charged by the defense counsel.

The plaintiffs persuaded the district court to allow discovery of defense counsel's fees and to write on the question of parity between plaintiff and defense counsel. No prior Fifth Circuit authority requires this comparison, nor does common experience, because the tasks and roles of counsel on opposite sides of a case vary fundamentally. If there were logical comparability, this court's decisions would have recognized it in the *Johnson* factors or in past lodestar decisions. And if, perchance, defense counsel had charged less in the course of this litigation, plaintiffs would have avoided any paean to comparability. *See Graves v. Barnes*, 760 F.2d 200 (5th Cir. 1983). To top it off, opposing counsel's total charge for the litigation was $4,864,923.37 – only $124,728 more than the court awarded to plaintiffs. That difference is just 2.63% of plaintiffs' total fee award (and 2.15% of plaintiffs' total award including costs). One would suppose a 2.63% disparity falls within a "rough approximation,"[6] but this leads plaintiffs

---

[6] At least one other court has referred to a 10 percent reduction in fee awards as "slight." *See Zolfo*, 50 F.3d at 261 ("The bankruptcy court cut Zolfo Cooper's total compensation request approximately twelve percent. When faced with a reduction of ten percent in a similar case, we stated that 'no court, viewing a record of this magnitude from the distance inherent in appellate review, could assess the reasonability of a reduction as slight as ten percent with flawless precision.'" (citation omitted)).

down a new rabbit trail, and they begin to argue about the higher time-value of money for fees paid during the litigation than at its conclusion.

We decline to layer needless complexity in an area in which current law is practical and clear. On remand, the district court need not consider *Perdue*.

## C.     **Fees for unsuccessful claims**

On cross-appeal, Lufkin attacks the other half of the district court's lodestar calculation – the number of hours reasonably expended. Lufkin claims that plaintiffs were awarded fees accrued in pursuing claims that were not successful. While plaintiffs initially waged an across-the-board challenge to Lufkin's employment procedures, the disparate treatment claims were dismissed,[7] and they prevailed only on the disparate impact claim relating to Lufkin's promotion practices. Lufkin must show clear error in the district court's factual determinations.

Our decision to remand the case to the district court to recalculate the fee award using Goldstein Demchak's home-district rates as a starting point also disposes of this issue. Calculating fee awards is a holistic endeavor. *See generally Hensley*, 461 U.S. at 429-37 (explaining that the amount of fees "must be determined on the facts of each case" and noting numerous competing considerations that might be balanced in determining the proper "equitable judgment"). Consequently, the district court may deem it necessary to reconsider this element of the fee award.

## III.  BACK PAY CALCULATIONS

Lufkin argues on cross-appeal that the district court erred in its calculation of back pay. Following the instructions of the *McClain II* panel, the district court awarded plaintiffs $3.3 million in back pay damages and $2.2

---

[7] *See McClain II*, 519 F.3d at 282-83.

million in pre-judgment interest to reflect a total of 136 lost promotions. We omit discussion of the finer details of the back pay award except to note that damages commence on March 6, 1994, or 300 days before McClain filed his EEOC claim. Title VII provides that, except for continuing violations like harassment, damages may only be awarded for violations that occurred 300 days before an EEOC charge is filed. *See* 42 U.S.C. 2000e-5(e)(1).

Lufkin now contends that the district court should have awarded damages commencing no earlier than April 2, 1996, or 300 days before Thomas filed his EEOC claim. Lufkin reasons that because *McClain II* held that only Thomas's EEOC claim sufficiently exhausted administrative remedies, only that claim may provide the benchmark for the 300-day calculation. Starting damages two years later, Lufkin argues, produces two results: the $593,208 in damages assessed for 1994-95 should be vacated; and the entire back pay award for the post-1996 period should be vacated because there is no statistically significant indication of racial discrimination using post-1996 data.

Lufkin does not appear to dispute that the district court correctly followed the instructions of *McClain II*. Therefore, Lufkin's attack on the district court's order is really an attack on the holding of *McClain II*. This court's rule of orderliness prevents one panel from overruling the decision of a prior panel. *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999). In addition, under the law-of-the-case doctrine, "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006) (citations and quotations omitted). Nevertheless, Lufkin argues that we may in effect overrule the previous panel because (1) an intervening 2010 Supreme Court opinion clarifies the 300-day time bar; (2) the law of the case does not apply because the *McClain II* implicit decision on limitations was not

squarely considered by the prior panel and was clearly wrong; and (3) *McClain II* may be set aside in order to prevent manifest injustice. On this record, we must reject these contentions.

First, the intervening Supreme Court decision on which Lufkin relies adds nothing. In *Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010), the Court rejected class certification for a sub-class of plaintiffs who alleged injury prior to the Title VII 300-day bar. *Lewis* neither forged new law nor elaborated on the 300-day period. Indeed, the 300-day statutory bar was clear well before *Lewis*. *See, e.g., United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed . . . . [It] has no present legal consequences.").

Second, Lufkin claims that *McClain II* overlooked the question of the proper date on which to commence damages for the lost promotion claim, and therefore, the law-of-the-case doctrine does not apply. *McClain II* noted, however, that Lufkin did not contest Thomas's 1997 EEOC claim at trial:

> Although McClain's EEOC complaint and the OFCCP investigation failed to exhaust the employees' class claims, Buford Thomas's EEOC complaint carries part of the requisite burden. . . . We conclude, however, that exhaustion was sufficient. *Significantly, Lufkin did not contend otherwise in the trial court*" (emphasis added).

*See* 519 F.3d at 275. According to Lufkin, the *McClain II* panel erred by not following the logic of its argument to the conclusion that any damages owed to the class for lost promotions must therefore be limited to the 300-day period preceding Thomas's claim. That *McClain II* did not go this extra mile is clear. That a proper application of the Title VII statute of limitations would have required this result is also clear.

The question before this court, then, is whether the law of the case doctrine should not apply either because *McClain II* overlooked this point or because manifest injustice ensues from a failure to vacate and remand the damage award.

Lufkin, we believe, does not merit our exercise of discretion to "correct" *McClain II* for two reasons. First, Lufkin waived its right to complain about the correct application of the time bar. Lufkin acknowledges in this appeal that it did not question at trial the sufficiency of Thomas's EEOC claim to exhaust administrative remedies for the class. Lufkin also admits that, as a consequence, it made no argument in the trial court or to this court on appeal concerning the proper time bar if Thomas's exhausted claim became the linchpin for the class's claims. Yet Lufkin strenuously challenged, and we ultimately upheld its challenge, of the sufficiency of McClain's EEOC charge to exhaust remedies for the class. Why <u>Lufkin</u> chose not to question, as a fallback, the ramifications of Thomas's EEOC claim is unstated. Lufkin added Thomas's EEOC charge to the trial court record. Lufkin now asserts that "no one" at the trial court level sought relief on that charge. But it is part of the record and Lufkin does not deny that it has operative effect. That this court overlooked how the 300-day statute of limitation would apply to claims founded on Thomas's EEOC charge is in large measure a product of Lufkin's oversight.

Second, despite the large sum of damages alleged to turn on this issue, we do not find "manifest injustice" that necessitates "correction." This case has been in litigation nearly fifteen years and has spawned five appeals. Vacating the damage award and remanding for further proceedings would be a costly and complex undertaking. It is likely that whatever amount Lufkin successfully shaved off the damage award would be offset by the attorneys' fees plaintiffs

No. 10-40036

would accrue on remand. Given this economic reality and the background circumstances, justice is better served by finality.

We therefore affirm the district court's back pay calculation.[8]

## CONCLUSION

We maintain–indeed, this panel has no authority to abrogate–our longstanding rule that attorneys for successful civil rights plaintiffs should presumptively receive local forum prevailing rates. The case before us today, however, is atypical because an avalanche of unrebutted evidence established that (1) plaintiffs' counsel required assistance in prosecuting the case and (2) no lawyers within the district or state were available to assist on this particular case. As a result, the trial court erred in failing to calculate the initial lodestar using the rates Goldstein Demchak attorneys typically charge in their own home district. The court, on remand, must reconsider the fee award using those rates as a starting point. We intimate no view on the final fee award to be issued.

There is no reversible error, however, in the district court's calculation of back pay.

For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[8] Because we conclude that the district court did not err in its use of 1994 as a backstop, we do not address Lufkin's arguments as to plaintiffs' inability to demonstrate a statistically significant shortfall in promotions.

No.  10-40036

EDITH H. JONES, Chief Judge, concurring:

Although it is unusual, I feel obliged to clarify a couple of points because of Judge Dennis's concurrence and to add one overarching comment.

Judge Dennis suggests that the majority opinion does not "categorically prohibit" district courts from comparing the fees of defense counsel and prevailing plaintiffs' counsel when statutory fee shifting occurs.  The language may not be "categorical," but it certainly disfavors inquiries on the precise "comparability" of plaintiffs' and defense counsel's fees such as the plaintiffs sought here.  Because neither Judge Dennis nor the plaintiffs cite any authority besides dicta in *Perdue* supporting the inapt comparison, and such comparisons are bound to distract district courts from the basic question of the reasonableness of the plaintiffs' fees, questions of comparability "layer needless complexity" in an area where the law is practical and clear.

Judge Dennis also suggests that the majority does not approve the trial court's characterization of the Goldstein Demchak firm's services as those of second-chair counsel. Of course we did.  This opinion finds error in two of the three relevant findings by the district court, but we do not criticize its third finding, that "Goldstein Demchak attorneys performed second-chair trial duties . . . ."  Moreover, we note that because the district court "carefully tailored the award, adjusting it, *inter alia*, for the second-chair role played by the firm," it may have to reconsider all aspects of the fee award.  No clear error was shown in this finding by the district court, which reviewed the previous proceedings thoroughly.  This finding by the district court is not reversed, and it may become relevant on remand.

It cannot escape the reader's attention that the Goldstein Demchak firm has been authorized to receive several million dollars in fees, and a million dollars in expenses, for prevailing in this protracted case.  But to them, that's

No.  10-40036

not enough, and they seek an hourly increase that will add $3 million more to their award.  If that happens, the attorneys will have received nearly double the dollar award of the plaintiffs.  What has fee shifting come to?  This is not an appeal about incentivizing modestly compensated attorneys for pursuing noble goals:  the  $400 hourly rate awarded to Mr. Garrigan is hardly a day laborer's fee.  This appeal is designed simply to enrich, not to enhance or encourage.  The Supreme Court holds that fee-shifting cannot bring a windfall to attorneys.  *See Rivera, supra.*  On remand, the district court should exercise its discretion within the parameters we have set out to prevent a windfall recovery.  *See Hensley, supra.*

21

No. 10-40036

DENNIS, Circuit Judge, concurring in the judgment.

I agree with much of the majority opinion — particularly its adoption of the generally accepted rule that "[w]hen fees are sought for an out-of-town specialist [attorney], courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 2005).[1]  I further agree that the application of this rule to the facts of this case requires us to vacate the district court's award of attorneys' fees to Goldstein Demchak and remand for reconsideration using the firm's usual rates as the basis for calculating the lodestar figure.  I also agree with the majority's decision to affirm the district court's calculation of back pay.

Insofar as the majority opinion states that the Supreme Court's recent opinion in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010), does not require parity between the hourly rates or total fees of the prevailing party's counsel and the other side's counsel, I agree with that conclusion.  However, the *Perdue* Court's comment that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," *id.* at 1672, does indicate to me that the

---

[1] This approach has been followed, with minor variations, by at least nine circuits. *See, e.g., Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009);  *Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 259 (3d Cir. 1995); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *Gates v. Deukmejian*, 987 F.2d 1392, 1405-06 (9th Cir. 1992); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983); *Donnell v. United States*, 682 F.2d 240, 252 (D.C. Cir. 1982).

No. 10-40036

hourly rates or total fees charged by defense counsel are relevant to the question of what is a reasonable hourly rate or total fee for a prevailing plaintiff's counsel. As the Seventh Circuit has put it, "when the defendant has hired expensive, out of town counsel, the plaintiffs seem justified in saying that the nature of the case required the skills of out of town specialists." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982). In at least some cases, the "hourly rates charged by the defendant's attorneys provide a helpful guide in determining whether similarly high rates and hours requested by the plaintiffs were reasonable." *Id.* I do not read the majority opinion as categorically prohibiting district courts from ever considering the rates charged by the opposing party's counsel when determining fee awards under fee-shifting statutes. In any event, consideration of defense counsel's fees appears to be unnecessary in the present case, given that "an avalanche of unrebutted evidence" (in the majority's words) already establishes that Goldstein Demchak's usual rates are the proper basis for the lodestar calculation.

The majority opinion does not address the question of whether the district court committed clear error by characterizing the Goldstein Demchak attorneys as playing a mere "second-chair" role.[2] It is unclear whether the characterization of an attorney as "second-chair" is at all relevant to the proper calculation of the fee award.[3] But even if it is, the undisputed

---

[2] Normally there would be good reason to defer to the trial judge's characterization of an attorney's role in a case. However, in this case, the judge who determined the award of attorneys' fees was not the same judge who presided over the trial.

[3] If anything, it may be relevant to "whether hiring the out-of-town specialist was reasonable in the first instance," *Hadix*, 65 F.3d at 535. But that question is no longer at issue in this case, since the majority opinion rightly concludes that the evidence in the record overwhelmingly shows that hiring Goldstein Demchak was reasonable.

No. 10-40036

evidence in the record clearly establishes that the firm did *not* play a "second-chair" role in litigating this case. Attorneys and staff from Goldstein Demchak worked more than four times as many billable hours on this case as did Garrigan and his one paralegal. At trial, Goldstein Demchak attorneys examined 11 out of 22 witnesses, including both sides' expert witnesses. And Garrigan sought the firm's help in the first place because of its superior reputation and expertise in the field of employment discrimination class action litigation. These facts are inconsistent with a mere "second-chair" role. Therefore, on remand, the district court should not rely on the erroneous "second-chair" label as grounds for reducing the fee award to Goldstein Demchak.

With these observations, I concur in the result reached by the majority: affirming the district court's calculation of back pay, vacating the fee award to Goldstein Demchak, and remanding for reconsideration of the fee award.