WEIMER, J.,
dissenting in part.
|) From that portion of the opinion cutting attorney Hopkins’ total hours by 20 *354 percent from the lodestar, I respectfully dissent.
At its most basic level, the lodestar is calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate, as the majority has correctly observed. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, by reversing the court of appeal and reinstating the district court’s reduction of attorney Hopkins’ total hours by 20 percent for attorney Hopkins’ “initial inexperience” during the course of this decade-long litigation, the majority distorts the lodestar calculation. Under prevailing jurisprudence, any reduction owing to initial inexperience is more properly accounted for by reducing the hourly rate, not by reducing the attorney’s hours.
Before addressing the jurisprudence on the more specific issue of inexperience, in my view, the error of the district court which is affirmed by the majority stems from a misapplication of the lodestar factors. Lodestar factors are not to be applied twice, as the majority points out when denying an upward enhancement to the lodestar for counsel’s remarkable success. “If any enhancement to the lodestar calculation is granted, it cannot be based upon a factor which is subsumed in the ^lodestar calculation.” Covington v. McNeese, 2012-2182, Op. at 351, citing Perdue v. Kenny A ex rel. Winn, 559 U.S. 542, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010). However, when cutting attorney Hopkins’ hours by 20 percent, the majority engages in the same impermissible double factoring, because the 20 percent cut from his hours worked is based on Hopkins’ experience, one of the very same factors the majority cites for arriving at $240 as Hopkins’ hourly rate. Covington, Op. at 349 & 351.
Recently, in the Perdue opinion briefly mentioned by the majority, the Court emphasized the point that the lodestar is intended to promote three “important virtues.” These virtues are not cited in the majority’s opinion, but because they represent the current view of the nation’s highest court on attorney fee-shifting and we are informed by the Court itself that those virtues are “important,” those intended virtues bear consideration. First, “the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.” Second, “the lodestar method is readily administratable.” Third, “the lodestar calculation is ‘objective,’ ... and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.” Perdue, 130 S.Ct. at 1672. Here, instead of promoting these virtues, the majority’s 20-percent cut in hours for an attorney’s initial inexperience thwarts each of these virtues.
As to the first virtue of compensating the attorney on an hourly basis, cutting the attorneys’ hours is directly opposed to hourly compensation. For any given case to be handled on an hourly basis, some attorneys are already experienced, others are not at all, and still others have varying degrees of experience. All attorneys, however, without exception, are required to represent a client with competence and diligence. | ?See Rules of Professional Conduct, Rule 1.1(a) (“A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.”); see also Rule 1.3 (“A lawyer shall act with reasonable diligence and promptness in representing a client.”). The 20 percent cut in hours under the *355 majority’s ruling essentially assumes the most experienced attorney must handle a fee-shifting case, otherwise the hours an attorney spends ensuring competence and diligence beyond those hours the most experienced attorney would have expended may be cut. Such a ruling is an obvious disincentive for all but the most experienced attorney to undertake a fee-shifting case. This disincentive runs contrary to the remedial purpose of fee-shifting schemes and disregards the fact that the most experienced attorney is not available in every geographic area or for every type of case. See McClain v. Lufkin Industries, Inc., 649 F.3d 374 (5th Cir.2011), cert. denied, — U.S.-, 132 S.Ct. 589, 181 L.Ed.2d 423 (2011). In McClain, the court noted: “The precedents and purposes governing fee-shifting awards in civil rights cases are well established. The awards facilitate plaintiffs’ access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel.” Id. at 381. The McClain opinion also collects cases in which “out-of-district counsel were necessary” and concluded that when local counsel is unavailable, counsel who normally command a higher rate in their own districts should be similarly compensated by the lodestar “as the starting point.” Id. at 382.
The second virtue of being “readily ad-ministratable” is similarly thwarted by the majority’s 20 percent reduction in hours. Quoting Hensley, the majority explains that courts should cut time that is “excessive, redundant, or otherwise unnecessary.” Hensley, 461 U.S. at 434, 103 S.Ct. 1933. However, the Hensley opinion does not give guidance as |4to how a court should administer a percentage cut in hours due to an attorney’s inexperience. Instead, the Hensley Court was admonishing counsel, not courts, as follows: “Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.” Id. at 434, 103 S.Ct. 1933.
The statement by the Hensley Court provides no guidance for courts to administer when cutting hours by any percentage, as the district court here has done and as the majority here has sanctioned. Returning for a moment to one of the virtues of the lodestar extolled by the Court more recently in Perdue, the lodestar should approximate an hourly compensation for the attorney as “if he or she had been representing a paying client who was billed by the hour in a comparable case.” Perdue, 130 S.Ct. at 1672. As a practical matter, and as dictated by market forces, an attorney’s inexperience with a given type of matter is usually reflected in the attorney setting a lower rate, not by erasing time that the attorney properly expended to ensure competent and diligent representation.
Not surprisingly, the cases are numerous that hold an attorney’s inexperience is to be factored in the hourly rate. See, e.g., Blum v. Stenson, 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (directing that the goal of the rate setting process in a fee-shifting case is to ensure “rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation”); Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir.2011), quoting Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir.2001) (describing lodestar process as requiring a court to “ealculate[] the time counsel spent on the case, subtract[ ] duplicative, unproductive, or excessive hours, and ... |sappl[y] prevailing rates in the community (taking into account the qualifications, experience, and specialized *356 competence of the attorneys involved).”); Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir.2008) (ruling that when determining a reasonable attorney fee award, “the court must consider what constitutes a reasonable hourly rate for work performed in the relevant community by attorneys of similar skill, experience and reputation.”); Farbotko v. Clinton County of New York, 433 F.3d 204, 208 (2nd Cir.2005), quoting Blum, 465 U.S. at 895 & 895 n. 11, 104 S.Ct. 1541 (holding that “a reasonable hourly rate is the ‘prevailing market rate,’ i.e., the rate ‘prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation.’ ”).
Furthermore, in the following cases in which a court was asked to cut hours based on an attorney’s inexperience, the courts refused to cut the hours. In Parker v. Town of Swansea, 310 F.Supp.2d 376, 395-96 (D.Mass.2004), the court ruled that elimination of research time spent by the attorney for the prevailing plaintiff in an action under 42 U.S.C. § 1983 was not warranted in calculating the attorney fee award. The defendant claimed the attorney spent such time educating himself on basic issues of federal procedure and practice and straightforward or generally known issues of federal and state tort law. Id. The court found the attorney’s time entries indicated that most of challenged time was spent researching specific issues related to the case and, to the extent that the work took longer for the attorney than it would have taken for a litigator with more extensive experience in civil rights litigation, the discrepancy was addressed through application of a lower hourly rate. Id. Similarly, in Roberson v. Brassell, 29 F.Supp.2d 346, 352-53 (S.D.Tex.1998), the court found that the lead counsel’s submission of 186.3 billable hours spent in prosecution of the prisoner’s civil rights claim did not reflect excessive or wasteful preparation time, | ^duplicative work, or overly vague entries. Lead counsel’s total hours submitted were, therefore, included in the calculation of the lodestar figure. Id. at 353. The court explained that unlike defendant’s counsel, plaintiffs counsel had no prior experience with prisoner litigation and needed adequate time to research relevant legal issues and prepare for trial. Id.
Lastly, the majority’s 20-percent cut in hours frustrates the third virtue intended for the lodestar calculation of being, “ ‘objective,’ ... and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.” Perdue, 130 S.Ct. at 1672. If the district court found any of attorney Hopkins’ time-specific entries “excessive, redundant, or otherwise unnecessary” (Hensley, 461 U.S. at 434, 103 S.Ct. 1933), then it would be proper to cut such entries from the lodestar. However, the majority does not identify any such entries in their review because the district court did not make such identification.
There is, in short, nothing meaningful in the district court’s findings to withstand scrutiny for a 20-percent cut in hours. In turn, by condoning the approach of cutting 20 percent in hours because “an attorney more experienced” would have billed less, the majority opinion of this court provides nothing to ensure “reasonably predictable results” will be obtained in future cases. The best that can be said of the 20-percent cut in terms of predictability is that it bears a sketchy resemblance to comparative fault in tort law, which calls for a determination of “the degree or percentage of fault.” La. C.C. art. 2323. However, unlike the comparative fault doctrine, the majority’s ruling gives no guideposts for how much or when to make a 20-percent cut in the hours an attorney has worked. Carrying the analogy to tort doctrine further, from all appearances, it seems the majority has adopted a doctrine *357 of “inexperience per se,” by which any attorney whose hours do not compare 17favorably to “an attorney more experienced” is susceptible to having 20 percent of the hours cut. Such a rule does not promote the best “billing judgment,” which the Court described in terms of discouraging inflated billing: “In the private sector, ‘billing judgment’ is an important, component in fee setting. It is no less important here. Hours that are not properly billed to one’s client also are not properly billed to one’s adversary pursuant to statutory authority.” Hensley, 461 U.S. at 434, 103 S.Ct. 1933.
Lastly, from my review of the district court’s ruling and the larger record, and given the long held position by defendant that compliance with the Americans with Disabilities Act was somehow optional or unnecessary, the most reasonable conclusion is that 100 percent of counsel’s hours were well spent. Lest we forget, “[ojurs is an adversarial system of justice that relies on the ability and resources of adversaries to uncover the truth.” Wolford v. JoEllen Smith Psychiatric Hospital, 96-2460, p. 6 (La.5/20/97), 693 So.2d 1164, 1168. In light of the ultimate resolution in this matter, the so-called inexperienced attorney obviously achieved appropriate, relevant experience necessary to represent his client well.