*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0238P (6th Cir.)
File Name: 02a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GERALD PASCHAL, et al.,
       *Plaintiffs-Appellees,*

    *v.*

FLAGSTAR BANK, FSB, a
Federal Savings Bank, f/k/a
First Security Savings Bank,
FSB,
       *Defendant-Appellant.*

No. 00-2164

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-73844—Avern Cohn, District Judge.

Argued: March 19, 2002

Decided and Filed: July 17, 2002

Before: SILER and GILMAN, Circuit Judges;
HEYBURN, Chief District Judge.[*]

_____

[*]The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

1

We have not been able to find any Sixth Circuit case that directly addresses whether fees for nontestimonial expert services are compensable under 1988(c). The First and Fifth Circuits, however, have granted a request for expert witness fees in similar situations. *Piester v. IBM, Corp.*, 1998 WL 1267929, at \*2 (1st Cir. May 14, 1998) (unpublished table decision) (holding that the district court did not abuse its discretion in granting attorney fees where the record fully supports a finding that the party reasonably expected to call the expert as a witness); *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1553 (5th Cir. 1984) ("Although courts do not ordinarily allow fees for witnesses who have not testified at trial, a court may award such a fee if the witness was ready to testify but extrinsic circumstances rendered his testimony unnecessary."). Because Galster was hired to be an expert witness, and he would have testified if the district court had not excluded the testimony of Flagstar's expert witness at the tail end of the trial, we conclude that the district court acted within its discretion in granting the successful plaintiffs the expert witness fees for Galster.

Perhaps none of these expert witness fees and miscellaneous costs will be affected by the fact that we have reversed the judgment in favor of the Paschals. This is an issue, however, that the district court may consider upon remand if an appropriate objection is made by Flagstar.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's calculations of these various items, but **VACATE** the award and **REMAND** the case for the court to reduce the attorney fees and interest to account for the fact that only the Edwardses have ultimately prevailed in this litigation, and to consider whether this fact will affect its award of expert witness fees and miscellaneous costs.

---

### COUNSEL

**ARGUED:** Francis R. Ortiz, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellant. Stephen R. Tomkowiak, Southfield, Michigan, for Appellees. **ON BRIEF:** Francis R. Ortiz, Rick A. Haberman, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellant. Stephen R. Tomkowiak, Southfield, Michigan, for Appellees.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge. Eight sets of African-American plaintiffs filed a mortgage-lending discrimination lawsuit against Flagstar Bank. Although the district court granted Flagstar summary judgment against three of these sets, the claims of the other five sets proceeded to trial. A jury verdict was ultimately returned in favor of two sets of plaintiffs. These plaintiffs then filed a motion for attorney fees, expert witness fees, costs, and interest. The district court awarded a total of $455,128.80, plus post-judgment interest, for these items. Flagstar objects to several components of this total award. For the reasons set forth below, we **AFFIRM** the district court's calculations of these various items, but **VACATE** the award and **REMAND** the case for the court to reduce the attorney fees and interest to account for the fact that only the Edwardses have ultimately prevailed in this litigation, and to consider whether this fact will affect its award of expert witness fees and miscellaneous costs.

### I. BACKGROUND

The jury found that two sets of the plaintiffs, the Edwardses and the Paschals, had proved by a preponderance of the evidence that Flagstar racially discriminated against them

district court did not state its reasons for granting $1,350 for his expert witness fee, which consisted of $750 for Galster's deposition and $600 for his potential appearance at trial.

We first turn to Flagstar's challenge to the fees regarding Wing. Unlike the evidence presented by Bradford, none of Wing's testimony applied to specific plaintiffs. Instead, it focused on Flagstar's general lending practices. A review of the trial record and the billing invoices that Wing submitted confirm the general applicability of his testimony. Also, contrary to Flagstar's claim, $50,514.35 for Wing's service as an expert witness in this complicated case is neither patently unreasonable nor disproportionate to the damages awarded. We therefore conclude that the district court did not abuse its discretion in granting the successful plaintiffs $50,514.35 in witness fees for Wing.

The $12,104.53 in costs were also not apportionable between the five sets of plaintiffs. Although the plaintiffs filed documentation in support of their request for costs and included detailed entries in their fee petition for each cost, Flagstar has not contested any specific entry. After reviewing the fee petition and the supporting documentation, we find no reason to question the district court's conclusion that these costs were related to the efforts of the successful plaintiffs. We therefore conclude that the district court did not abuse its discretion in granting the successful plaintiffs $12,104.53 in costs.

Finally, Flagstar contends that the district court abused its discretion in granting the $600 portion of George Galster's expert witness fee that was billed for his potential appearance at trial, even though he was not called to testify. Because the district court did not think that Flagstar was contesting the plaintiffs' request for Galster's fee, the court did not fully discuss its reasons for granting the request. The district court did, however, point out that the plaintiffs "intended to call" Galster as a witness, but that "[t]he need for his testimony was obviated by the ruling that defendant's expert could not testify."

when they applied for mortgages. A verdict of $125,000 in compensatory damages was awarded to the Edwardses, and $250,000 in compensatory damages and $325,000 in punitive damages was awarded to the Paschals.

After the verdict was entered, these plaintiffs filed a motion for attorney fees, expert witness fees, costs, and interest. Their motion requested: (1) $160,766.80 in attorney fees; (2) $87,538 in expert witness fees and costs (consisting of (a) $50,514.35 for Martin Wing, Ph.D., who testified as an expert in econometrics and provided a statistical analysis of Flagstar's lending practices, (b) $23,569.12 for Calvin Bradford, Ph.D., who testified as a mortgage underwriting expert, (c) $1,350 for George Galster, Ph.D., a fair-lending testing expert who was prepared to rebut Flagstar's expert witness, and (d) $12,104.53 in miscellaneous costs); (3) interest; and (4) "such other and additional relief that the Court deems just and appropriate." As the district court noted, this final request is the traditional way in which an attorney-fee enhancement is requested. The district court granted the plaintiffs' requests, including a $80,000 attorney-fee enhancement. This timely appeal followed, with Flagstar challenging all the components of plaintiffs' request other than the award of interest.

## II. ANALYSIS

### A. Standard of review

This court will not disturb a district court's determination regarding the award of attorney fees and costs unless it concludes that the lower court has abused its discretion. *Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir. 1991). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989) (citation omitted). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

## B.   Attorney fees

Flagstar claims that the district court abused its discretion in failing to review the complete billing records of the plaintiffs' counsel in order to determine whether the requested fee improperly included payment for hours that the attorneys spent working on the claims of the losing plaintiffs. As the district court noted, however, Flagstar "does not directly take issue with the hours detailed by [the plaintiffs' attorneys] or their hourly rates. Rather, [Flagstar] says that insufficient detail has been furnished in support of the hours of work."

The primary concern in evaluating a request for attorney fees "is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "A reasonable fee is one that is adequate to attract competent counsel, but ... [does] not produce windfalls to attorneys." *Id*. (internal quotation marks omitted) (alteration in original). In determining a reasonable attorney-fee award, the district court must calculate "the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate." *Id*. As noted above, this court will not overturn an attorney-fee award unless we conclude that the district court abused its discretion.

The district court found that the billing statements and affidavits of the plaintiffs' attorneys "adequately support the hours claimed." As part of their request for attorney fees, the plaintiffs submitted 36 pages of descriptive billing entries for Attorney Tomkowiak and 2 pages of descriptive entries for Attorney Stanton. Each of the entries in these billing statements includes a detailed description of how the attorney spent the hours that he billed. Some descriptions include as many as ten lines of small-font text. The plaintiffs submitted the affidavits of three Detroit lawyers who have experience litigating housing-discrimination cases to confirm that a $185 hourly rate for Attorney Tomkowiak and a $150 hourly rate for Attorney Stanton were reasonable. As noted above, Flagstar did not challenge the reasonableness of the requested hourly rates.

$50,514.35 in expert witness fees for Martin Wing because his testimony pertained not only to the two successful sets of plaintiffs, but also to the three sets of plaintiffs whose claims were rejected by the jury. This same argument is put forth by Flagstar to challenge the $12,104.53 that the district court awarded in costs. Flagstar also contests $600 of the $1,350 in expert witness fees awarded for George Galster on the basis that he did not testify. Because it concedes that the district court's award of $23,569.12 in expert witness fees for Calvin Bradford did not include costs associated with his testimony for the sets of plaintiffs whose claims were unsuccessful, Flagstar does not challenge this component of the award.

Section 1988(c) provides that "[i]n awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(c). As noted above, we will not disturb a district court's determination regarding the award of attorney fees and costs unless the court has abused its discretion. *Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir. 1991).

The district court stated that the expert witness fees for Wing should not be reduced because his "testimony was directed not to the specific defenses relating to particular plaintiffs but rather to the discriminatory nature of [Flagstar's] lending policies and substantially contributed to the success of the Edwards[es] and the Paschals at trial." In reaching this conclusion, the district court noted that the Supreme Court has held that where the facts or legal theories of different parties are interrelated, a district court does not have to apportion expenses mechanically on the basis of their success or failure. *Hensley*, 461 U.S. at 438. The district court also granted the plaintiffs all of the costs they requested because "there is no basis for the Court [to find] that these costs should be apportioned between the [successful plaintiffs] and the unsuccessful plaintiffs at trial. Indeed, it appears that even if only the [successful plaintiffs] proceeded to trial, these costs would still have been incurred." As to Galster, the

*Blanchard*, 489 U.S. at 91 n.5. The district court stated that it was doing just that when it held that an enhancement was warranted because this case involved "claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove."

Furthermore, the district court noted that it was granting an attorney-fee enhancement because "[t]he marshaling of evidence was an arduous and time-consuming task." The Supreme Court has held that the skill required to present a successful case is an appropriate ground for a trial court to consider in determining the reasonableness of the attorney-fee award. *Blanchard*, 489 U.S. at 91 n.5. (noting that the third *Johnson* factor takes into account "the skill requisite to perform the legal service properly").

Finally, in evaluating whether an attorney-fee award is reasonable, a district court may also consider "awards in similar cases." *Id*. The district court did so by concluding that an enhancement should be granted because "the hourly rates on which the 'lodestar' amount is computed are comparatively modest in light of prevailing rates in this area, and not out of line with those awarded in similar cases." In addition to analyzing comparable cases, the district court also relied on the sworn affidavits of three attorneys, all of whom stated that the hourly rates on which the lodestar amount was based were below the market rate. We thus conclude that the district court did not abuse its discretion in awarding the successful plaintiffs an $80,000 attorney-fee enhancement. Because of our reversal of the district court's denial of Flagstar's motion for judgment as a matter of law with respect to the Paschals' claim, however, the attorney-fee enhancement will have to be recalculated on remand.

### D.    Expert witness fees and costs

Flagstar claims that the district court abused its discretion in failing to apportion a percentage of the requested expert witness fees and costs to the losing plaintiffs. In particular, Flagstar maintains that the court should not have granted

In his affidavit, Attorney Tomkowiak confirms that the billing statements only include "attorneys fees and costs incurred on behalf of [the Paschals and the Edwardses] . . . ." He specifically declares that "[t]ime entries and costs pertaining solely to the claims of other Plaintiffs and former Plaintiffs . . . have been excluded from the itemized entries for attorneys fees and costs." Flagstar has failed to point to any specific entries which would cause it to doubt the veracity of Attorney Tomkowiak's sworn statement. After reviewing the entries ourselves, we find no reason to doubt the accuracy of the billing statements or the reasonableness of the number of hours billed. We therefore conclude that the district court did not abuse its discretion in awarding the plaintiffs $160,766.80 in attorney fees. Because, however, we have reversed the district court's denial of Flagstar's motion for judgment as a matter of law with respect to the Paschals' claim, the attorney fees will have to be recalculated on remand.

### C.    Attorney-fee enhancement

Flagstar claims that the district court abused its discretion in granting the plaintiffs an attorney-fee enhancement of $80,000. In particular, Flagstar contends that two of the district court's reasons for granting an enhancement—the "arduous and time consuming nature" of the litigation and the fact that the plaintiffs' attorneys did "an excellent job at trial"—are improper under Supreme Court precedent. Flagstar also disputes the district court's conclusion that the hourly rates used to calculate the "lodestar" award were "modest."

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit enunciated 12 factors that trial courts may consider in calculating reasonable attorney-fee awards. The Supreme Court has determined that "*Johnson*'s 'list of 12' . . . provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees . . . ." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). These 12 factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 91 n.5.

This court has held that a trial court may apply the *Johnson* factors during its initial calculation of the attorney-fee award or when the court is considering a request for an enhancement. *United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502-03, 503 n.3 (6th Cir. 1984) (stating that the trial court should first conduct the initial evaluation, then examine the award against several factors, including the *Johnson* factors, but also noting that trial courts usually subsume the analysis of those factors within the initial calculation). The district court should also "provide a concise but clear explanation of its reasons" for its conclusions regarding an attorney-fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In support of their request, the plaintiffs emphasized that the following factors justify an attorney-fee enhancement under *Johnson*: (1) this was a relatively novel and difficult case, (2) the issues were complex, and (3) their attorneys incurred a significant risk in undertaking the representation. The district court began its analysis by correctly noting that the plaintiffs' third reason, the contingency risk involved in this case, is not a valid ground for enhancement under federal fee-shifting statutes. *Burlington v. Dague*, 505 U.S. 557, 567 (1992). Nevertheless, the district court did conclude that there were several other valid reasons for granting the

plaintiffs an attorney-fee enhancement. It stated that an enhancement was warranted for the following reasons:

> Tomkowiak and Stanton did an excellent job at trial in proving to the jury the merits of the Edwards[es]' and Paschals' claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove. The marshaling of evidence was an arduous and time consuming task. Moreover, the hourly rates on which the "lodestar" amount is computed are comparatively modest in light of prevailing rates in this area, and not out of line with those awarded in similar cases.

For these reasons, the district court granted the plaintiffs a 50% increase to the "lodestar," resulting in a total attorney-fee award of $240,766.80.

As we understand the district court's explanation, its decision to enhance the attorney-fee award rests on the following four grounds: (1) the attorneys "did an excellent job at trial," (2) this case involved "claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove," (3) "[t]he marshaling of evidence was an arduous and time consuming task," and (4) the hourly rates used to calculate the lodestar are relatively modest. Contrary to Flagstar's assertions, we are unable to conclude that the district court abused its discretion in relying on these factors in granting an attorney-fee enhancement.

Under *Johnson*, a trial court may appropriately consider "the experience, reputation, and ability of the attorneys." *Blanchard*, 489 U.S. at 91 n.5 & 93. The district court stated that it did so when it noted that one of the reasons "an enhancement is appropriate" is that "Tomkowiak and Stanton did an excellent job at trial."

In considering whether an attorney-fee enhancement should be awarded, a district court may also consider "the novelty and difficulty of the questions" involved in the case.